DEWOODY v. JONES, TRUSTEE.

4-6326                                    150 S. W. 2d 208

Opinion delivered April 28, 1941.

346

Coleman & Gantt, for appellant.

Triplett & Williamson, for appellee.

McHaney, J.   This is a suit for specific performance brought by appellee against appellant to compel him to accept a deed to certain real property and pay for same, under a written contract between them providing that appellee should furnish an abstract showing a merchantable title in him.   The abstract was furnished, but, in the opinion of appellant's attorneys, it did not show such a title, and he declined to purchase.

The case was submitted to the trial court on an agreed statement of facts, substantially as follows: title to the property involved was in J. B. Talbot at his death in January, 1918.   It forfeited to the state for the non-payment of taxes of 1931, and was certified to the state October 15, 1935, and the state's title was confirmed on November 3, 1936.   On July 6, 1937, the state sold and conveyed a part of this land to Annie Bunn on July 6, 1937, and the remainder thereof was sold and conveyed to Paving District No. 69 of Pine Bluff (a municipal improvement district, formed in 1923), on March 25, 1940. On November 2, 1939, the widow, heirs and devisees of J. B. Talbot, deceased, and Annie Bunn conveyed to

said Paving District the lands here in controversy in consideration of the agreement of said Paving District to permit J. B. Talbot's widow, then advanced in years and with an expectancy of ten years, to occupy the large house on said property rent free (she then occupying said house as her home) for the term of her natural life, and in satisfaction of the accrued and delinquent paving taxes thereon. On April 3, 1940, said Paving District conveyed said lands to appellee, subject to the right of occupancy reserved to the widow, as aforesaid, and upon the express condition that appellee, his successors or assigns, should pay all taxes, both general and special, then due or thereafter to become due on said property. The said property is by the stipulation located as being immediately south of Rutherford Park Addition to Pine Bluff and is separated therefrom by Nineteenth avenue, which is commonly called Talbot avenue. The paving district is three blocks long on Talbot avenue and the Talbot property involved here constituted exactly one-half the property embraced in the limits of said paving district, and the annual tax thereon was about one-half the total annual tax due the district, and all the Talbot property was included therein except a small strip, hereafter referred to. Beginning in 1931, said property was delinquent in the payment of taxes to the paving district and so continued through 1938, aggregating $4,108.50, which exceeded the value of the property, and for each of said years the district defaulted in the payment of its bonds and continued in default until the consummation of the agreement, hereinafter referred to among the district, the Talbots and the bondholders in 1939. In 1938, the district brought suit to foreclose its lien for the delinquent taxes due on said property which extended for a distance of 1,180 feet east and west. There were only two houses on it, and the larger being the Talbot home, entirely in the district, and the smaller, being set back so far south of Talbot avenue, that only a part, about 18 feet of it, was in the district and the remainder on Talbot property outside the city limits and, of course, outside the district. (In this vicinity the city limits were 144 feet south of Talbot avenue, so that the depth of the Tal-

bot property in the district was only 144 feet, whereas the depth of a normal city lot in Pine Bluff is 160 feet.) The Talbots were unable to pay their taxes to the paving district, and it was unable to pay its bonds with half its taxes lost. It was recognized by the bondholders and the district, if it continued its foreclosure suit and obtained title to the property in that way, the Talbots would have four years to redeem from the sale, during which time the property would not be salable, and that with only 18 feet of the smaller house in the district, such house could not be considered of any value. So it was agreed among them to make the conveyance aforesaid for the consideration set out. The result was that the district acquired all the Talbot property in its limits and 16 feet to the south thereof, which increased the depth thereof from 144 to 160 feet and included all of the smaller house, with sufficient for a back yard. The amount of the delinquent taxes, as stated above, was $4,108.50. The district deeded same to appellee for the bondholders and they surrendered for cancellation the same amount in bonds and interest coupons. The effect was to pay $1,188 delinquent bond interest and $2,920.50 delinquent bonds which paid all delinquencies through 1938. As a part of said agreement the bondholders surrendered an additional amount of bonds and interest coupons in the sum of $415, which paid the 1939 taxes on said property, making a total consideration to the district of $4,583.50 for property of the agreed value of $4,000, and the district will be able to pay off the remaining bonds and interest in 1942. Because of objection to the clause in the deed from the district to the appellee, imposing a personal liability upon him, his successors and assigns for the payment of taxes, both general and special, upon said property, the district released such obligation by an instrument in writing to that effect, and it was stipulated that such condition was not a part of the agreement of the parties, and that appellee was not authorized to accept a deed with such a condition in it, and was never discussed with him at any time, and to this extent the deed was more favorable to the district than was contemplated by the parties.

The trial court, after writing a splendid opinion in the case, entered a decree enforcing the specific performance of the written contract of sale of September 14, 1940, between appellant and appellee, and this appeal followed.

Until the passage of act 91 of the Acts of 1925, p. 281, a municipal improvement district had no statutory authority to purchase real estate sold under decree of the chancery court for collection of delinquent assessments, but such power was conferred by that statute, and again by act 207 of 1937, now § 7317 of Pope's Digest.

Appellant contends that because the legislature has never conferred the power on such districts to acquire the title to lands, except under foreclosure and sale for delinquent taxes in the chancery courts, such power, as has been assumed in the case at bar, cannot be necessarily implied, because they "do not need lands and have no justification for acquiring title to them except in the one case where the taxes owing to the district are not paid and no one else will bid the amount adjudged to be due." In other words, as we understand appellant's contention, unless there is a foreclosure and sale to it in the chancery court, a municipal improvement district can acquire no title by a voluntary conveyance to it by the property owner in satisfaction of the delinquent taxes against, or for that consideration, but must go to the trouble and expense of a foreclosure proceeding, even though the delinquent taxes amount to more than the value of the property and await the expiration of the period of redemption allowed the owner by law, fixed at four years by act 252 of 1933, before making disposition and realizing anything thereon. It was stipulated here that the delinquent taxes amounted to more than the value of the property. We can, therefore, safely assume no one would bid that amount therefor and the district would become the purchaser and after four years more would acquire the title. The whole object of the district was to collect its delinquent taxes and the object of said Acts of 1935 and 1937 was to aid such districts better to accomplish that end. The sole object of the district in this case was to collect the delinquent taxes on exactly one-half the

property in the district and it appears to us that it managed to do so in the only way open to it for effective results. It is frequently said the law does not require the doing of a vain or useless thing. What could be more vain or useless than to require such a district to bring suit to foreclose, or to prosecute one already brought to a foreclosure and sale for delinquent taxes, when the owner is willing to convey the property free of any other liens or encumbrances in satisfaction of such delinquent taxes? Especially is this true when, as here, title vests at once, thus enabling the district to sell and realize thereon. We are, therefore, of the opinion that the express power conferred by statute to acquire property by foreclosure of its tax lien, necessarily implies the power to accomplish the same result by a conveyance of the property owner, free of other liens.

Nor can we agree with appellant that this would be engaging in the real estate business for such districts any more than the acquisition of the property by foreclosure. The sole object in each instance is to collect its taxes by resale of the property.

It is also suggested that the district had no power, express or implied to acquire land beyond its boundaries. We agree with the trial court that "the inclusion of certain property lying outside of the district to include the whole of the little house was merely incidental to the main purpose of the deed executed by the Talbots to the district, the sole purpose of this conveyance being to acquire the property for the amount of the delinquent taxes due on it to the district."

The only other argument made by appellant, other than the alleged erroneous description of the property in the Talbot deed to the district and in the district's deed to appellee, about which counsel are not very insistent, is that the deed from the district to appellee is burdened by the condition that he, his successors or assigns should pay all taxes then due or thereafter to become due on the property, which creates a personal liability on any one owning the property, and, unless released, prevents the title from being merchantable. It

is stipulated that this provision was inserted in the deed from the district to appellee without authority of the bondholders and without discussing the matter with appellee, and the district executed a release of this provision. The stipulation shows it was a mistake to put it in the deed, but even though it were not, such a condition would be unenforcible, as there is no personal liability for taxes on real property.

The decree is accordingly affirmed.